**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATION COAL CO., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 01-254<br>(Judge Futey) |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| RAPOCA ENERGY CO., LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-442<br>(Judge Futey) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Order dated September 13, 2006, the parties respectfully submit this joint status report, in which they describe their respective positions regarding further proceedings necessary in these cases.

I. Status Of Discovery

In its order of September 13, 2006, this Court, at plaintiffs' request, ordered the parties to "try to informally resolve their discovery disputes according to their past practices by Wednesday, December 13, 2006." Defendant notes that the latest discovery dispute centered on formal discovery requests the Government had propounded on the plaintiffs in February 2006. The "past practices" referenced by the Court included the modified discovery procedures adopted for the five test plaintiffs, in which auditors employed by the Office of Surface Mining Reclamation and Enforcement

("OSM"), an agency of the U.S. Department of the Interior, reviewed books and records provided by representatives of the five test-case plaintiffs. In order to comply with the Court's order, the OSM auditors sent letters to representatives of the test plaintiffs, attaching the interrogatories the Government originally served on February 8, 2006. As promised in the letters, the auditors also followed up with telephone calls and e-mails to the test plaintiff contacts to provide further clarification of the information requested. Representatives of all five test plaintiffs provided letter responses to the OSM auditors.

Plaintiffs' Position Regarding Discovery

By email to Jim Walter Resources, Inc. ("JWR") on August 7, 2006, the OSM auditor provided a copy of its audit report delineating JWR's reclamation fee payments that the auditor verified were paid (1) on direct sales to foreign customers and (2) on sales to U.S. coal brokers, which resold the coal to foreign customers. No changes have been made to JWR's August 7 audit report.

With regard to the other four test plaintiffs, by letter dated November 8, 2006, Government counsel provided Plaintiffs' counsel with schedules setting forth similar information, indicating those sales to U.S. coal brokers, as well as to Canadian customers, which the OSM auditors concluded they were unable to verify.[1]

Two of these other four test plaintiffs, Pioneer Fuel Corporation and Kingston Resources (which are related), are attempting to obtain sworn statements from certain domestic coal brokers, to whom they sold coal which was then resold by the broker to the foreign customer, regarding the export of the coal. Pioneer and Kingston understand from their discussion with the OSM auditor that if such sworn statements

1 The schedule for Eastern Associated's sales to Canadian customers was inadvertently omitted from the November 8 letter and was provided to Plaintiffs' counsel one week later.

are obtained, OSM will consider them to be sufficient proof of export. (On December 18, 2006, Pioneer and Kingston advised Plaintiffs' counsel that, unlike their other coal brokers to whom the Department of Justice had issued subpoenas for information regarding the export of the coal, the Department of Justice did not issue such subpoenas to two coal brokers that had previously been related to Pioneer and Kingston. Plaintiffs' counsel has so advised Government counsel, who indicated that she would review her files.)

As to sales through brokers that were made by plaintiffs other than Pioneer, Kingston, and Jim Walter Resources, Inc., the parties are still in disagreement over whether plaintiffs have sufficiently demonstrated that the coal was ultimately exported.

As to sales by several of the test-case plaintiffs to Canadian customers, OSM sent letters to certain of those customers for the purpose of obtaining information regarding the export of coal to those companies. The United States has received responses from some companies; other companies have indicated their intent to comply with the request, but have not been able to do so yet. The Government has not yet provided Plaintiffs' counsel with the responses from those companies. Plaintiffs believe that certain additional discovery may be required. In addition to Plaintiffs' counsel's desire to review the aforementioned responses received from the Canadian companies, Plaintiffs believe that an additional avenue may exist to confirm the export of coal sold through brokers. Plaintiffs are determining the viability of this approach and will contact Government counsel very shortly to discuss it. Additionally, Plaintiffs may wish to depose OSM auditors concerning the basis for their conclusions that, in the case of the test plaintiffs other than Jim Walter Resources, Inc., insufficient proof exists to establish the export of certain coal sold to Canadian companies and/or to brokers who resold the

coal to foreign purchasers.

Defendant's Position Regarding Discovery

Defendant maintains that no further extension of the discovery period is warranted and specifically objects to any depositions of the OSM auditors. Plaintiffs have been on notice from the beginning of discovery (and, indeed, the inception of this litigation) that, while OSM absorbed virtually all of the cost and burden of discovery, they bear the ultimate burden of proving that any coal upon which their claims are based was actually exported.

Kingston and Pioneer were the first two test plaintiffs audited by OSM. Those audits commenced in October 2005 and were conducted by the same audit team. From that day forward, the OSM auditors requested, among other things, proof of actual export of the coal on which Kingston and Pioneer's claims are based. On multiple occasions, the OSM auditors requested information from Kingston and Pioneer related to the proof of export issue. When adequate responses were not obtained, counsel for the United States wrote a letter to plaintiffs' counsel on January 26, 2006, which details the information the government deems necessary to prove actual export. Now, at this late date, after the extended discovery period closed on December 13, plaintiffs are seeking another extension to provide information they have had well over a year to provide.

Further, plaintiffs are now suggesting that formal discovery, by way of depositions, is appropriate even though plaintiffs refused to provide responses to interrogatories and recently insisted that discovery should proceed on an informal basis. Plaintiffs should not be allowed to have it both ways, particularly given that the discovery period has ended.

Defendant's position is that plaintiffs should be precluded from producing any additional material in support of their claims. Plaintiffs' inability or failure to supply all of the information the Government requested will bear upon the sufficiency of the evidence plaintiffs are able to proffer in attempting to meet their burdens of proof.

As to the letters OSM sent to Canadian companies, the purpose of these letters was to attempt to determine whether some of the coal tonnage at issue was actually exported. Plaintiffs have never asked to for copies of the correspondence. Defendant further notes that, as with other issues in this case, the Government has gone above and beyond what could reasonably be expected from it to obtain information needed to prove aspects of plaintiffs' claims, upon which plaintiffs will bear the ultimate burden of proof.

II. Further Proceedings

Plaintiffs' Position Regarding JWR

The Court, in its September 13, 2006 order, also ordered the Government to decide "on any remaining factual issues concerning Jim Walter Resources, Inc. so that a consent judgment may be entered in favor of that plaintiff." As the Court is aware, Jim Walter Resources, Inc. ("JWR") is a plaintiff in No. 01-254, and is also one of the five test plaintiffs. The parties agree that there do not appear to be any remaining factual issues with regard to JWR's transactions, and the parties, therefore, attempted to agree to joint stipulations of fact with respect to JWR.

Plaintiffs' position is that there is no dispute as to the amount of reclamation fees that JWR paid on exports – $5,356,740.99 (*i.e.*, $5,223,133.80 in direct sales to foreign purchasers and $133,607.19 in sales to U.S. brokers that resold the coal to foreign purchasers). The only issue that remains to be resolved in connection with JWR's

transactions is legal in nature, and it is confined to the few transactions in which JWR's sold coal to U.S. brokers, namely: whether JWR's sales to such brokers, upon which JWR paid reclamation fees, occurred when the coal was in the export stream. There is no dispute that JWR's direct sales to foreign purchasers all occurred when the coal was in the export stream.

Plaintiffs' counsel provided the Government with a draft stipulation of fact setting forth the total amount of reclamation fees paid on exports by JWR, and the Government responded with more detailed stipulations of fact. Although Plaintiffs' counsel agrees with the amounts stated in the Government's draft stipulation, JWR cannot agree to that stipulation because it objects to certain of the Government's characterizations of JWR's export sales. Nevertheless, it is Plaintiffs' position that because the amount paid by JWR is not in dispute, the Court is in a position to enter judgment immediately in JWR's favor, at least with respect to the amount that JWR paid on its direct sales to foreign purchasers. The Government does not consent to the entry of a judgment in JWR's favor.

Plaintiffs respectfully submit that there is no reason to deviate from the course charted by the Court in its September 13 order, in which the Court instructed the Government to decide "on any remaining factual issues concerning Jim Walter Resources, Inc. so that a consent judgment could be entered in favor of that plaintiff." The Court reiterated its instruction during the November 20 telephonic status conference, at which time it noted that even if the government raises a legal defense in connection with JWR's sales to brokers, and claims that JWR's sales of coal to brokers were not in the stream of export, judgment could still be entered with respect to JWR's direct sales to foreign customers. Because no factual issues remain, judgment should

now be entered in favor of JWR in the amount of reclamation fees that it paid on its direct sales to foreign purchasers, the Government's objection notwithstanding. Plaintiffs respectfully submit, moreover, that given the extensive time and attention that both the Court and the parties have already devoted to this issue, the judgment should be entered without the necessity of a formal motion for entry of same by JWR.

As has already been discussed with the Court, Plaintiffs respectfully submit that the equities strongly warrant the immediate entry of judgment in JWR's case. Since this Court's liability decision 18 months ago, OSM has continued to require coal exporters to pay — to the tune of an estimated $150,000 per month, without the possibility of interest — the reclamation fees that this Court has declared unconstitutional. Even under the most optimistic briefing schedule, *see* Government's proposed briefing schedule, *infra*, it will take months before briefing on damages issues is concluded and a decision is issued by the Court. Moreover, Plaintiffs are constrained to note that it appears that they may have to request an evidentiary hearing on the issue of damages with regard to broker sales (by all of the test plaintiffs) and sales to Canadian customers (by all of the test plaintiffs except JWR). In any event, Plaintiffs believe that the Government's proposed briefing schedule is premature given that Plaintiff believes that additional discovery is in order with regard to certain issues.

Judicial efficiency also warrants the immediate entry of judgment in JWR's favor with regard to its direct sales to foreign customers. As Plaintiffs' counsel informed the Court during the November 20 telephonic status conference, five other cases, involving 26 other plaintiffs, are before five other judges of the Court of Federal Claims, who have stayed those cases pending the conclusion of the actions assigned to this Court. Immediate entry of judgment in JWR's favor regarding its direct sales will expedite the

Government's appeal, and a ruling by the Federal Circuit, on the issue of the reclamation fee's constitutionality as applied to exports. That, in turn, will expedite proceedings in the cases pending before the other judges of this Court. Finally, although the Government has raised the specter of piecemeal appeals in this case, it is likely that all the damages issues, which are largely common to all of the test plaintiffs — with the notable exception of JWR, whose direct sales to foreign customers have all been verified to OSM's satisfaction — can be resolved in a single appeal following this Court's decision on those issues.

Plaintiffs therefore are in accord with the approach previously suggested by this Court during the November 20 telephonic status conference: (1) immediately entering judgment in JWR's favor with respect to its direct sales to foreign customers, and (2) reserving the Government's "stream of export" legal defense in connection with JWR's broker sales for briefing along with briefing on the damages raised by OSM in connection with the other test plaintiffs' sales.

Defendant's Position Regarding All Test Plaintiffs, Including JWR

As noted above, the OSM audit has concluded and the discovery period has closed for the five test plaintiffs. Thus, the time is ripe to decide upon procedures for the entry of judgment for the five test plaintiffs, in order to facilitate an appellate proceedings. The Government objects to the abandonment of the test case procedures, which it pursued in good faith, to permit an expedited judgment and appeal by only one test plaintiff, JWR. Although the Government agrees with the amounts of fees paid by JWR, as set forth above, the Government does not "consent" to the entry of judgment in favor of JWR and asserts that any such judgment is premature at this time. The Government intends to assert the defense that a small percentage of JWR's

coal sales transactions did not occur in the export stream of commerce. The Government also reserves the right to respond, on the record, to any motion for judgment.

The Government intends to oppose any motion for judgment with respect to only JWR because plaintiffs have not demonstrated that the exceptional circumstances required for entry of a partial final judgment for only one plaintiff are present. *See* RCFC 54(b). The Government maintains that the damages claims of all five test plaintiffs should be litigated to conclusion before judgment is entered for any of the test plaintiffs. This would allow the Government to present a more complete record to the Court of Appeals for the Federal Circuit should it decide to appeal this Court's liability ruling and any rulings with respect to the damages claims of the five test plaintiffs. The Government would suffer substantial prejudice if it is required to pursue an appeal based only on JWR's direct sales, upon which there are no apparent factual or legal disputes (assuming the correctness of the Court's liability ruling). Plaintiffs' suggested approach would essentially require the Federal Circuit to decide any liability appeal in a vacuum, without the benefit of a fully developed record. Moreover, entry of a final judgment for JWR could lead to piecemeal appeals, even with respect to JWR, whose sales to domestic brokers would be excluded from the order plaintiffs currently seek. Plaintiffs' suggested approach would unduly burden and complicate the issues before the Federal Circuit

Plaintiffs maintain that the Court can enter judgment in favor of JWR without plaintiffs filing a motion to that effect. Defendant disagrees. Because the United States does not consent to the entry of judgment, the Court should only enter judgment based on an appropriate motion from plaintiffs, with the Government having the right to

respond to any such motion on the record. With discovery concluded, all five test plaintiffs are ready to proceed toward final resolution, and there is no need to sever the claim of JWR for special treatment. Thus, consistent with the test case procedure adopted for these cases, the Government continues to request and recommend that the Court enter one final judgment in this case with respect to the five test plaintiffs.

Accordingly, the Government proposes the following schedule to obtain a resolution with respect to all five test plaintiffs:

| | |
|---|---|
| December 22, 2006 | Plaintiff's Motion for Entry of Judgment in Favor Of JWR |
| January 22, 2007 | Defendant's Responses to Plaintiff's Motion and Motion for Summary Judgment With Respect To All Five Test Plaintiffs |
| February 21, 2007 | Plaintiffs' Reply to Defendant's Response and Response to Defendant's Motion |
| March 8, 2007 | Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment |

## Conclusion

Because the parties remain in disagreement as to discovery matters and further proceedings in this case, the parties respectfully request another status conference.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/Steven H. Becker
STEVEN H. BECKER
PAUL A. HOROWITZ
SUZANNE I. OFFERMAN
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036

Counsel for plaintiffs Consolidation Coal Co., *et al.*

S/John Y. Merrell, Jr.
JOHN Y. MERRELL, JR.
Merrell & Merrell, P.C.
1477 Chain Bridge Road, Suite 101
McLean, Virginia 22101

Counsel for plaintiff Rapoca Energy Co., LLC

December 19, 2006

S/Jeanne E. Davidson
JEANNE E. DAVIDSON
Deputy Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 616-2228
Telecopier: (202) 514-8624

Counsel for Defendant

DANIEL W. KILDUFF
U.S. Department of the Interior
Office of the Solicitor

Of Counsel

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on December 19, 2006, a copy of the foregoing "Joint Status Report" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Tara K. Hogan