IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONSOLIDATION COAL COMPANY, ET AL.,

Plaintiffs,

v.

UNITED STATES,

Defendant.

No. 01-254C
Judge Futey

RAPOCA ENERGY COMPANY, LLC,
F/K/A RAPOCA ENERGY COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 01-442C
Judge Futey

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF JIM WALTER RESOURCES, INC.**

John Y. Merrell, Jr.
*Attorney of Record*
MERRELL & MERRELL, P.C.
1477 Chain Bridge Road
Suite 101
P.O. Box 1111
McLean, VA 22101
Tel.: (703) 790-8440
Fax: (703) 790-8944

Counsel for Plaintiff
Rapoca Energy Company, LLC,
f/k/a Rapoca Energy Company

Steven H. Becker
*Attorney of Record*
Paul A. Horowitz
Suzanne I. Offerman
*Of Counsel*
BAKER & MCKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 626-4100
Fax: (212) 310-1600

Counsel for Plaintiffs
Consolidation Coal Company, et al.

This Court has broad discretion under RCFC 54(b) to direct the entry of a final judgment as to fewer than all of the claims or parties upon a determination "that there is no just reason for delay." *See, e.g., Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001) ("District courts have substantial discretion in determining when there is no just cause for delay in entering judgment under Rule 54(b)."). The undisputed facts leave no doubt that there is no just reason for any further delay in the entry of judgment in favor of Plaintiff Jim Walter Resources, Inc. ("JWR") with regard to its sales of coal directly to foreign purchasers ("direct sales").

To ensure that there is no doubt that such a judgment would be a final, appealable judgment, JWR hereby waives its right to a refund of reclamation fees paid from the first quarter 1995 through the third quarter 2005 on its sales of coal to U.S. middlemen/brokers who then resold the coal to foreign purchasers ("broker sales"), inasmuch as this Court has yet to rule on the still to be briefed issue of whether JWR's (and the other test plaintiffs') sales to brokers occurred in the export stream.[1] In view of JWR's waiver of its claims on broker sales, a judgment in JWR's favor with regard to its direct sales will constitute a final judgment because the amount of its refund will have been conclusively determined by the Court for all of the tax quarters covered by the judgment. *Contrast*, *Houston Indus. Inc. v. United States*, 78 F.3d 564, 568 (Fed. Cir. 1996) (Court of Federal Claims erred in certifying order pursuant to RCFC 54(b) when plaintiff's "tax liability and the amount of its tax refund were *not* finally

[1] A breakdown of reclamation fees paid by JWR on broker sales, for which JWR is waiving a right to a refund, is set forth in Exhibit 1 hereto. These undisputed figures are taken from the Office of Surface Mining Reclamation and Enforcement's ("OSM") "Schedule of Domestic Export Coal Sales" provided to JWR in August 2006, which were verified by OSM in its audit of JWR. A breakdown of reclamation fees paid on JWR's direct sales from the first quarter 1995 through the third quarter 2005, for which judgment should be entered under RCFC 54(b) (the amount of which also is not in dispute), was attached to Plaintiffs' motion filed on January 24, 2007.

determined" for the income tax years in question) (emphasis added). JWR's waiver of its right to a refund on its broker sales thus renders moot the government's argument that the pendency of issues regarding broker sales precludes entry of a Rule 54(b) judgment. *See* government's opposition brief ("Gov't Br.") at 7-10.

As to the sole remaining question of whether this Court should, in its broad discretion, determine that there is no just reason for delay in entering judgment regarding JWR's direct sales, nothing in the government's opposition brief negates the following key facts: (1) it has been almost *two years* since this Court held on April 4, 2005 that the reclamation fee is unconstitutional as applied to export sales of coal; (2) OSM has continued to require coal exporters to pay reclamation fees on their export sales despite this Court's April 4, 2005 decision; (3) "there is no factual dispute as to the monetary amount associated with the transactions for which JWR is claiming [a] refund" (Gov't Br. at 1);[2] and (4) "significant factual and legal issues remain for the other four test case plaintiffs" (Gov't Br. at 4). These undisputed facts alone demonstrate that, notwithstanding the government's unfounded attempt to blame Plaintiffs for the length of time that has been required for discovery regarding damages, there is, in fact, no just reason to delay entry of judgment in JWR's favor regarding its direct sales until such time as all of the damages issues are resolved for the other four test plaintiffs.

Turning the facts on their head, the government insists that Plaintiffs have shown no hardship, even though OSM has required them to continue to pay an assessment that this

---

[2] The government notes that it has never issued a document to JWR purporting to be a "final audit report" (Gov't Br. at 6 n.5), but that is irrelevant. There is no dispute (1) as to the amount that JWR paid on its direct sales, (2) that all such sales occurred while the coal was in the stream of export to foreign customers, and (3) that all such coal was actually exported. *See* Gov't Br. at 4 (acknowledging that JWR's direct sales are a "pristine" factual scenario).

Court has held unconstitutional.[3] The government also makes the bizarre claim that prompt resolution of the constitutional issue, which will be facilitated by the entry of judgment in JWR's favor, would somehow work "substantial prejudice" to the government. Gov't Br. at 3. Tellingly, although the government makes a variety of arguments as to why judgment in JWR's favor should not be entered at this point, none of them remotely demonstrates any "prejudice" to the government, and as discussed below, they are otherwise without merit.

**1. Resolution of Damages Issues for All Test Plaintiffs is Unnecessary for Appellate Resolution of the Constitutional Issue.**

The closest the government comes to trying to support its claim of substantial prejudice is its assertion that an immediate appeal to the Federal Circuit would present that court with an "incomplete and distorted picture" of Plaintiffs' sales, which "could substantially affect the viability of any Government appeal." Gov't Br. at 4. But again, the government fails to explain just how the "viability" of its appeal on the constitutional issue will be compromised. That is not surprising, for resolution of all of the test plaintiffs' damages claims is, in fact, irrelevant to the Federal Circuit's consideration of whether imposition of the reclamation fee on exported coal violates the Export Clause's proscription that "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. art. I, § 9, cl. 5. The constitutionality of the reclamation fee under the Export Clause turns on the key legal determination of whether the reclamation fee (1) is a "tax" rather than a "regulation of commerce," and (2) is imposed on the sale of coal, rather than on the production of coal. If the reclamation fee is a tax on the sale of coal, then it is unconstitutional when "the coal at

[3] The government claims that there would be "substantial procedural and logistical difficulties" if it were to cease collection of reclamation fees on exported coal. Gov't Br. at 5 n.3. There is no need to address the legitimacy of those claims, as Plaintiffs do not seek to prevent OSM from collecting the tax on exports pending its appeal on the constitutional issue. What Plaintiffs do seek is the immediate entry of judgment in JWR's favor so that the government's appeal on the constitutional issue may be commenced without further delay.

issue was actually exported and the [sales] transactions occurred in the export stream of commerce." Gov't Br. at 4. The government concedes that JWR's direct sales all were made while the coal was in the stream of export, that all such coal was actually exported, and that JWR's direct sales thus present a "pristine" factual scenario. Gov't Br. at 4. A judgment in favor of JWR with regard to its direct sales, therefore, is the perfect vehicle for the Federal Circuit to rule on the basic constitutional issue.

Delaying matters solely to present the Federal Circuit with the factual scenarios for the other test plaintiffs, for whom disputes remain as to the extent to which their coal was actually exported and their sales were made in the export stream of commerce, adds nothing to the Federal Circuit's ability to decide the basic constitutional question. Once the Federal Circuit renders its constitutional ruling in JWR's case, it will be a simple matter to apply that ruling to the factual scenarios of the other plaintiffs. Simply put, just as this Court was able to expeditiously and thoroughly decide the constitutional issue based on the record before it, so too will the Federal Circuit.

**2. <u>Judicial Economy Warrants the Immediate Entry of Judgment in JWR's Case.</u>**

The government raises the specter of "piecemeal appeals" (Gov't Br. at 3), but fails to present any credible scenario in which more than a *single* additional appeal, covering *all* damages issues, should be required. Indeed, as the government notes, the test plaintiffs were selected precisely because it is believed that their "size and other factors . . . would illustrate a variety of potential factual transactions." Gov't Br. at 3. And the fact that an additional appeal will be taken on damages issues does not militate against this Court's entry of judgment in JWR's favor under RCFC 54(b). *See Ginnett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1093 (2d Cir. 1992) ("Although it would always be in the best 'efficiency'

interests of the court of appeals to allow but one appeal from each 'civil action', rule 54(b) expressly contemplates the entry of 'partial' final judgments, leaving the decision to 'finalize' the judgment to the broad discretion of the district court, not the court of appeals.")[4]

While exaggerating the possibility of "piecemeal appeals," the government ignores the fact that prompt resolution of the constitutional issue in immediate appellate proceedings will aid not only this Court in the cases at bar, but also this Court and numerous other judges of the Court of Federal Claims who are presiding over still other cases challenging the constitutionality of the reclamation fee under the Export Clause. As Plaintiffs noted in their motion for entry of judgment in JWR's favor, eight such cases involving twenty-six other coal exporters are currently pending before six different judges in the Court of Federal Claims, including three other cases (involving eight different plaintiffs) before this Court, and five other cases (involving eighteen different plaintiffs) before five other judges of this Court. *See* third attachment to Plaintiffs' January 24, 2007 motion. All but one of those eight other cases have been formally stayed pending a final resolution of the liability issue in this case, and in the sole case that has not been formally stayed, Judge Allegra has directed the parties to file a joint status report every 60 days in order to update the court on the status of the present action. The immediate entry of judgment in JWR's favor for its direct sales will expedite the

[4] The government claims that guidance from the Federal Circuit on damages issues would allow for more efficient resolution of the claims of all 64 plaintiffs (Gov't Br. at 4 n.2), but that is far outweighed by the need for prompt resolution of the constitutional issue by the Federal Circuit. Apart from the equities of the situation, discussed above, should the reclamation fee's constitutionality be upheld on appeal, it would then relieve the coal producers, the government, and the Court from having to devote further time and resources on damages issues after such appellate proceedings. And if the Federal Circuit finds that the reclamation fee is unconstitutional as applied to exports, it will still be able to offer this Court guidance on damages for the vast majority of plaintiffs when it considers this Court's damages determinations for the test plaintiffs, in what will likely be a single appeal covering all damages issues.

government's appeal and an appellate decision on the constitutional issue, which, in turn, will expedite proceedings in the numerous other cases in the Court of Federal Claims involving this issue.

Of course, as noted above, should the constitutionality of the reclamation fee as applied to export sales be upheld in appellate proceedings, it would be unnecessary for the coal producers, the government, or any judges of this Court to devote further time and resources on damages issues after such appellate proceedings. This, too, strongly militates in favor of expediting the commencement of the government's appeal on the constitutional issue, which will be accomplished if judgment is immediately entered in JWR's favor with regard to its direct sales.

The government discounts the need to expedite appellate proceedings, asserting that it will only take a "minor amount of time" to resolve the damages issues for the other test plaintiffs. Gov't Br. at 3. The government assumes that just because it intends to file a motion for summary judgment regarding issues that it considers to be "narrow" (Gov't Br. at 4-5), those issues will be resolved quickly. But as even the government acknowledges, resolution of those issues will require full briefing and an evidentiary hearing ("the taking of testimony") (Gov't Br. at 5) before this Court can begin its deliberations. And before the parties can even arrive at the briefing/hearing stage, it appears that formal discovery, including possible depositions of the OSM auditors, will be necessary.[5]

[5] The government claims that "the discovery period ended on December 13, 2006" (Gov't Br. at 6), but, as Plaintiffs noted in their motion, this Court has not yet established an end-date for discovery. In its Order filed September 13, 2006, the Court merely stated that "[t]he parties shall *try to informally resolve* their discovery disputes according to their past practices by Wednesday, December 13, 2006." (Emphasis added.) That the parties were unable to do so by the target date does not mean that the "discovery period has now closed," as the government claims. Gov't Br. at 6. In the spirit of cooperation urged by the Court, certain of

**3. Immediate Entry of Judgment in JWR's Favor is a Justified, and Very Limited, Departure from the "Test Case" Procedure.**

The government claims that entry of judgment in favor of only one test plaintiff is inappropriate because it is "contrary to the test case procedure to which the parties agreed and this Court adopted." Gov't Br. at 2. The government is operating under the misconception that Plaintiffs somehow agreed that they would not seek entry of judgment in favor of less than all of the test plaintiffs regardless of the circumstances.

In fact, as the government itself notes, all that the parties agreed to prior to discovery, in a June 2, 2005 Joint Status Report, was that "it would be beneficial to complete proceedings upon the claims of a limited number of 'test' plaintiffs, then (potentially) present all issues subject to appeal to the Court of Appeals for the Federal Circuit before resolving the remaining claims." Gov't Br. at 3 (quoting June 2, 2005 J. Stat. Rep. at 3). The government fails to mention that in the very same status report, the parties were careful to also state that, "*At this time*, the parties believe this procedure will be most efficient. However, depending upon how the process develops, we may revisit the Court's comments during the May 11[, 2005] telephonic status conference regarding the possibility or pursuing an interlocutory appeal." June 2, 2005 J. Stat. Rep. at 3 n.1 (emphasis added). Thus, both parties were aware from the very outset that a departure from this approach might become necessary in the future. Although the government complains that an appeal on the "pure constitutional question" would be tantamount to an interlocutory appeal (Gov't Br. at 4) — which it is not; it would be an appeal from a final judgment — the parties expressly recognized that an appeal

---

the test plaintiffs have, in recent weeks, continued to provide OSM's auditors with additional documentation in the hope that discovery disputes can be resolved informally, and OSM has been reviewing that information. Thus, Plaintiffs have not yet sought formal discovery.

solely on the constitutional question might, at some point, become necessary. That time has come.

When the parties agreed upon the test plaintiff approach, Plaintiffs could not have foreseen that almost two years later, damages issues would still remain unresolved except for JWR's direct sales. As things have come to pass, OSM has taken positions on damages issues that are directly at odds with positions taken by the IRS in the Black Lung Excise Tax case, which also involved a successful challenge under the Export Clause, and has sought documentation that was never deemed necessary by the IRS. There is no just reason to delay the entry of judgment with regard to JWR's "pristine" direct sales when, after almost two years, "significant factual and legal issues remain for the other four test case plaintiffs." Gov't Br. at 4.

Although ultimately irrelevant to the issue at hand, the government's unjustified attempt to blame Plaintiffs for the length of time required for discovery (Gov't Br. at 5) cannot be left unanswered. While it is true that Plaintiffs voiced their opinion that there was no need to respond to certain formal interrogatories from the government in view of the informal audit process that was agreed upon by the parties — interrogatories that Plaintiffs have since responded to, in any event — Plaintiffs did so because they believed that the audit process was the most efficient way to proceed. Indeed, in its Order filed September 13, 2006, this Court encouraged the parties to "informally resolve their discovery disputes according to their past practices," *i.e.*, the audit process. Plaintiffs have endeavored to respond quickly to the OSM auditors' requests, as it is in the Plaintiffs' economic interest to do so.

And although Plaintiffs have consented to six extensions of the discovery period (see Gov't Br. at 5), it is hardly the case that the extensions were necessary because the test

plaintiffs failed to timely respond to the Government's document requests. *See* Gov't Br. at 5. As the government well knows, extensions frequently become necessary despite one's best efforts and due to circumstances beyond one's control. *See, e.g.*, J. Stat. Rep. (June 2, 2005) at 4-5 (Government counsel's statement that he "believes that detail-driven tasks such as the one required here ultimately require more time than the parties initially believe," and that "the press of other business will make it impossible for Government counsel to work exclusively upon — or even devote a substantial percentage of his resources — to the questions regarding the amounts owed to plaintiffs pursuant to this Court's liability ruling during the Summer and early Autumn 2005"); Defendant's Unopposed Motion for an Enlargement of Time for Completion of Discovery (Feb. 27, 2006) at 2, 3 (noting that the parties have worked "cooperatively" but that additional time is needed, *inter alia*, to allow for the collection of certain information and documents in the possession of third party brokers); Defendant's Consent Motion for an Enlargement of Time to Complete Discovery (May 17, 2006) at 1 (similarly noting that additional time is necessary to obtain documentation that "can be obtained only from third parties, such as brokers").

The government's finger-pointing thus is unjustified. More importantly, it is beside the point, for it is undisputed that no factual or legal issues regarding damages exist with regard to JWR's direct sales, while significant issues do remain for the other four test plaintiffs. Judgment should therefore be entered immediately with respect to JWR's direct sales.

## Conclusion

For the reasons stated above and in Plaintiffs' motion, this Court should enter judgment in favor of Jim Walter Resources regarding its direct sales to foreign purchasers.

Respectfully submitted,

S/John Y. Merrell, Jr.
JOHN Y. MERRELL, JR.
*Attorney of Record*
MERRELL & MERRELL, P.C.
1477 Chain Bridge Road
Suite 101
P.O. Box 1111
McLean, VA 22101
Tel.: (703) 790-8440
Fax: (703) 790-8944

Counsel for Plaintiff
Rapoca Energy Company, LLC,
f/k/a Rapoca Energy Company

S/Steven H. Becker
STEVEN H. BECKER
*Attorney of Record*
Paul A. Horowitz
Suzanne I. Offerman
*Of Counsel*
BAKER & MCKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 626-4100
Fax: (212) 310-1600

Counsel for Plaintiffs
Consolidation Coal Company, et al.

**Reclamation Fees Paid by Jim Walter Resoures, Inc.**
**on its Broker Sales for the Period 1Q/95 – 3Q/05**

| **Quarter** | **Amount Paid** |
|---|---|
| 3Q/96 | 501.16 |
| 2Q/97 | 6,208.07 |
| 3Q/97 | 1,877.50 |
| 2Q/98 | 13,158.23 |
| 4Q/98 | 475.47 |
| 1Q/99 | 9,564.45 |
| 2Q/99 | 23,414.34 |
| 3Q/01 | 22,791.54 |
| 4Q/01 | 12,748.20 |
| 1Q/02 | 32,151.85 |
| 2Q/02 | 10,716.40 |
| **Total** | **133,607.21** |

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on February 14, 2007 a copy of the foregoing "PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF JIM WALTERS RESOURCES, INC." was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

S/Suzanne I. Offerman